# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**UNITED STATES OF AMERICA**

  **V.**        **CRIMINAL NO.  3:20cr-30038-MGM**

**KEITH SUFFRITI**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S SENTENCING MEMORANDUM

It is the paramount obligation of this court to impose a sentence that is sufficient, but not greater than necessary, to comport with the purposes set forth in 18 USC 3553 (a) (2).  *See, Kimbrough v. United States,* 552 U.S. 85, 101 (2007).  In making its determination as to what that sentence should be, the Supreme Court has instructed that the court consider all of the factors set forth by Congress in subparagraphs (a) (1) – (7) of 18 USC § 3553.  *Id.*  Although no longer mandatory, the Guidelines provide the starting point for determining an appropriate sentence and in fact must be considered by this court.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  *United States v. Martin,* 520 F.3d 87, 91 (1st Cir. 2008).  The United States Probation Services has of course prepared a Presentence Investigation Report (PSR) in which it has calculated the guidelines, and determined that Mr. Suffriti is a Level 33, Category II offender. His imprisonment range per the probation department's calculation of the Guidelines, is therefore 151-188 months.

Mr. Suffriti entered his plea pursuant to F.R.Crim.P. 11 (c)(1)(C).  The agreed upon sentence is 60 months in the custody of the Bureau of Prisons.  For that reason, this Memorandum will be more succinct than if there were a wide disparity between the Government

1

and the defense in terms of the appropriate sentence.  In the paragraphs that follow, this memorandum will address the pertinent considerations set forth in 18 USC § 3553.

### A.   *History and Characteristics of the Defendant*

The PSR generally does an adequate job of describing Mr. Suffriti's home life.  It must be emphasized that he is extraordinarily close to both of his parents.  He speaks of them in glowing terms and does not hold either of them responsible for the difficulties that he has had in his own life.  His father was always a hard worker and provided well for him as well as his mother and three older siblings.  The "elephant in the room" of his childhood appears to be his mother's alcoholism.  While she was never abusive or disagreeable, her intoxication was noticeable on a daily basis and was embarrassing to Keith.  It undoubtedly affected his older siblings as well, as they have all struggled with addiction or alcoholism to some degree in  their lives, although they are all doing fine now.

At the time of his arrest, Keith's  six-year-old niece, Hope, was living with his family. Keith and his parents are all extraordinarily fond of her.  Keith declined to seek release at the time of his arraignment, because he knew that given his charges, the Department of Children and Families would insist that Hope not be in the home.  He chose to remain in custody rather than put his parents in the position of having to send Hope back to live with her father, for him to be released.

Whether it can be blamed on his mother's alcoholism or some other unknown or undisclosed reason, the central fact of Keith's life—his opiate addiction—emerged during his early adolescence and has of course tainted the rest of his life.  He had been experimenting with marijuana and other drugs from the time he was thirteen years old, but at age fourteen began using opiates in pill form.  And like most users of pills, he fairly quickly went on to use heroin

intranasally at first, but later intravenously, primarily due to its lower cost.  He went to rehab at age 16 and to jail at age 17 but always relapsed within a short time after his return home. He has been on methadone maintenance since shortly after his release from custody at age 21.  Though nominally in compliance with the program at the time of his arrest in December of 2020, Mr. Suffriti was smoking a lot of marijuana and doing nothing with the abundance of free time that he had on his hands.  He had not worked in a number of years, and although is parents report that he was generally agreeable to helping out around the house when asked, he did little else. Whether this is due to his years of substance use or to some undiagnosed mental disorder, remains to be determined.  Neither his parents nor his siblings have any insight as to why he was doing nothing with his life.  They all believe that he needs help.

### B.   *Nature and Circumstances of the Offense*

Mr. Suffriti does not dispute the factual statement in support of the charges to which he has entered a plea.  Some context is required however.  Like so many child pornography offenders, Mr. Suffriti says that he really had no interest in it until he was directed to a chat group on Kik through other websites that he visited assiduously.  Perhaps in some sort of misguided effort to stimulate himself, Mr. Suffriti had become somewhat addicted to "gore" websites, particularly bestgore.com which was shut down by the Canadian government.  These websites traded primarily in images of grisly killings, mostly by the Mexican Mafia and other violent narco-terrorists.  He is unable to explain how he gravitated to this material.  He describes it as like going past a bad car accident.  "You don't want to look, yet you can't stop looking either."

Once he was in the Kik chat group, he was required to post images to stay involved.  Yet, forensic examination conducted by the FBI of his phone and two other devices seized from his

home demonstrated that there was no illegal pornography on any of the devices.  Had the case gone to trial, the Government would have had to prove distribution through testimony of undercover law enforcement agents, that he re-posted 16 videos within the chat group on four discrete days in May of 2020.  There is nothing on any device in his possession to demonstrate that he possessed child pornography at any time before or after these dates.  Indeed, Mr. Suffriti claims that he removed himself from the Kik group not long after these dates.   What drew the immediate attention of the FBI, and a search of his home pursuant to a warrant was a mistaken belief that one of the children depicted was his niece, Hope.  Agent Smythe informed counsel the day after Mr. Suffriti's arraignment, that the FBI had conclusively determined that the image in question was *not* Hope and in fact had originated in Ukraine.

C.  <u>*Need for the Sentence Imposed to:*</u>

a.   <u>*Reflect the Seriousness of the Offense*</u>

Certainly, a sentence of sixty months in custody for distributing sixteen videos that had likely already been seen by everyone in this Kik group is hardly insignificant.  It is a substantial sentence and one that appropriately demonstrates the court's and the public's unwillingness to tolerate this behavior.

b.  <u>***Provide for Adequate Deterrence and Protect the Public***</u>

Deterrence comes in two forms:  specific and general.  General deterrence is the idea that if the costs are too great, persons contemplating engaging in the conduct in question will be deterred from doing so.  While the Guidelines reflect the congressional intent that general deterrence should play a role in the sentencing process, this policy raises at least two distinct concerns.  First, how much of a sentence is necessary to produce a deterrent effect?  Reasonable people could obviously disagree.  But second, general deterrence requires a presumption that an

offender makes a rational, calculated decision as to whether to commit a certain offense, and that he would be deterred from doing so if the cost is too high. The defense contends that most offenders commit their crimes while in economic and/or emotional crises, and therefore are incapable of engaging in the kind of cost-benefit analysis that would deter someone from criminal behavior. This is perhaps more true for child pornography offenses than some others.

Specific deterrence is of course a legitimate consideration. In its simplest terms, a defendant is specifically deterred from committing a new drug offense if he is incarcerated and unable to commit the crime. But clearly, specific deterrence can be accomplished by means other than incarceration. As this court is well-aware, the probation service has the ability to severely restrict and monitor its charges while they live in a non-custodial environment. See, e.g. *United States v. Amawi*, 695 F.3d 457, 488 (6th Cir. 2012).

In any event, a sentence of sixty months is more than adequate to fulfill the Court's obligation to give due consideration to the need to deter the conduct in question.

### c.  *Provide Education and Vocational Training*

Mr. Suffriti cannot credibly claim that he has done anything on his own to enhance his education and/or vocational skills, in many years. Hopefully, he will be placed at an institution where he can learn a trade that he can use upon his release. He has been working on getting his Hi-Set diploma and hopes to have it completed by the time he is sentenced.

### D.  *The Kind of Sentences Available*

Pursuant to the terms of the plea agreement and F.R.Crim.P. 11 (c)(1)(C) the only sentence available to the court without giving Mr. Suffriti the opportunity to withdraw his plea and go to trial is the agreed upon sentence of sixty months in the custody of the Bureau of Prisons.

E. ___The USSG and any Pertinent Policy Statements___

According to the calculations made by the probation service, Mr. Suffriti is a level 33, Category II offender for which the advisory guidelines call for a sentence of 151 to 188 months. Defense counsel has previously filed objections to the PSR in which he contends that Mr. Suffriti should be viewed as a level 27, category I offender with a sentencing range of 70-87 months. Counsel will not repeat the arguments in support of his calculations herein.  By either calculation, the advisory guidelines are above the sentence called for in the plea agreement.  The defense contends, without objection from the Government, that in spite of this fact, the proper sentence considering all of the criteria under § 3553 (a) is sixty months in the custody of the Bureau of Prisons.

F. ___Need to Avoid Unwarranted Sentencing Disparities___

The jointly agreed upon sentence is well within the range of sentences typically imposed on defendants without a significant history of criminal convictions and whose distribution was on a relatively small and isolated scale.  Counsel is unaware of whether any other participants in the Kik chat group were prosecuted and if so, what they received as punishment.

G. ___Miscellaneous Matters___

Mr. Suffriti requests that the court recommend that he participate in the Residential Drug and Alcohol Program (RDAP).  As noted in the PSR and earlier in this memorandum, the defendant has struggled with opioid and to a lesser extent cannabis dependency since his early adolescence.   Mr. Suffriti further requests that the court recommend that the BOP place him at a facility as close to his home as possible, so long as it offers the RDAP program.  This would appear to be either FCI Allenwood or FCI Fort Dix.

Relatedly, and again as noted earlier in this memorandum the defendant requests that the court recommend him for continued Medication Assisted Treatment (MAT) in the form of methadone for his opioid use disorder. Mr. Suffriti has been receiving methadone-based MAT for the past two years while in custody at the Hampden County Jail and House of Correction (HCJHC). While this should happen administratively, we request that the court enter this request on the order of judgment and commitment along with pages from the defendant's medical record at HCJHC that will be provided at sentencing.

Lastly, Mr. Suffriti should receive credit for 731 days in custody awaiting resolution of this case.

THE DEFENDANT

By   /s/  David P. Hoose
DAVID P. HOOSE,  BBO#239400
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street
Northampton, MA  01060
(413) 586-4800
(413) 582-6419 (fax)
dhoose@strhlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this Sentencing Memorandum, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

      /s/ David P. Hoose
David P. Hoose, Esq.

7